IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:24-cr-031 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Defendant Freeman's |
| Kevin Deramus a/k/a "K-Bone", et al., | : | Motion to Suppress Statements |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendant Dorian Freeman's Motion to Suppress Statements. (Doc. 58.) The Government filed a Response in opposition. (Doc. 59.) Freeman seeks to suppress the statements he made to law enforcement officers following his arrest on March 14, 2024 because, he asserts, the statements were obtained in violation of his rights to counsel under the Fifth and Sixth Amendments. The Court held an evidentiary hearing on this matter on September 16, 2024. Because the Court finds that the officers violated Freeman's Fifth Amendment right to counsel, the Court will **GRANT** the Motion to Suppress.

**I.      BACKGROUND**

On April 13, 2024, the Government filed a nine-count Indictment against Defendants Kevin Deramus *a/k/a* "K-Bone," Gregory Isham, Dorian Freeman, Damien Tribble, and Edmond Hurt asserting drug and weapon charges. (Doc. 1.) Defendant Freeman is charged in four counts as follows: (1) conspiracy to distribute and possess with the intent to distribute controlled substances including detectable amounts of heroin, fentanyl, and cocaine; (5) possession with intent to distribute fentanyl and cocaine; (6) possession of a firearm and ammunition by a prohibited person; and (7) possession of a firearm in furtherance of a drug trafficking crime. (*Id.*

at PageID 1–4.) In the pending Motion to Suppress Statements, Freeman seeks to suppress the statements he made to Officers Brandon Cook and Molly Shust of the Cincinnati Police Department ("CPD") on March 14, 2024 following his arrest.

Freeman was arrested as part of a CPD and United States Drug Enforcement Agency ("DEA") joint task force investigation into drug trafficking.[1] He was held in an interrogation room for over one hour before Officers Cook and Shust entered the room to begin questioning him. The officers introduced themselves as DEA officers. (Recording at 1:09:18.) Officer Cook took the lead questioning Freeman. He asked Freeman if he had been read his rights, and Freeman responded that they "didn't give me no rights at all." (Recording at 1:15:01.) Officer Cook asked about Freeman's education, and Freeman responded that he had a GED and that he could read and write. (Recording at 1:15:10.)

Officer Cook then placed the Notification of Rights form containing written *Miranda* rights on the table in front of Freeman and pointed to the rights as he read them to Freeman. (Recording at 1:15:25.) He did not ask if Freeman understood his rights and did not ask Freeman to sign the form. After the rights were read, Freeman stated that he "would love to talk to a lawyer." (Recording at 1:15:55.)

Officer Cook then immediately continued his conversation with Freeman as he withdrew the Notification of Rights form from the table:

> Officer Cook: "I'm not asking questions; I'm letting you know what's going on. Fair?"
>
> Freeman: "Cool."
>
> Officer Cook: "Cause that is your right, and I don't want to infringe upon that in the least."

---

[1] The relevant facts come from the recording of Freeman's custodial interactions with the officers, the testimony of Officer Cook at the evidentiary hearing, and the signed Notification of Rights entered into evidence at the hearing.

(Recording at 1:16:04.) Officer Cook then explained that the DEA and the CPD task force had performed a six-month investigation after which they knew that Defendant was being supplied with heroin and fentanyl and that Defendant was selling those drugs. (Recording at 1:16:13.) He next informed Freeman about the mandatory term of imprisonment he could face if the charges against him were proven:

> Based on the amount of drugs we've recovered today, and previous today, that, and your criminal history the sentencing guidelines in federal court—which is where you will be charged—are at minimum of 10 years in federal prison, up to life in prison, okay?

(Recording at 1:16:49.)

Officer Cook reiterated that Freeman did not have to talk to them, and then continued to lay out the evidence they had obtained against Freeman. He stated that officers had recovered "drugs and drug money from [his] apartment." (Recording at 1:17:14, 1:17:39.) That disclosure prompted Freeman to explain that any money found in his apartment was the proceeds from insurance claims for two car accidents and had nothing "to do with drugs or drugs—the money has nothing to do with drug money at all." (Recording 1:18:00.)

In response to that non-criminal explanation for money found in the apartment, Officer Cook reiterated that the officers had "at a bare minimum, drugs recovered from [his] place" and that he "will be going down to the jail." (Recording at 1:20:00.) Freeman then asked what drugs were recovered, but Officer Cook denied specific knowledge. (*Id.*) Freeman asked Officer Cook to verify that this would be a federal case, which Officer Cook verified. (Recording at 1:20:29.) Next, Officer Cook stated that Freeman had "the ability to help [himself] out" because the "drug police are always wanting to have conversations." (Recording at 1:21:15.) He then stated:

> But if you don't want that, that's cool. But what I'm saying is, while we are downstairs working on our paperwork that is going to take us awhile. . . If sometime between now and when we come back and there's a police officer in a

3

uniform standing with us getting ready to take you to the jail, if you change your mind, we will gladly sit down and have a conversation. Okay?

(Recording at 1:21:30.)

After a brief exchange during which Freeman said he needed to use the lavatory, Officer Shust changed the topic and asked if Freeman "had a certain attorney" or if he needed "to get one assigned to [him]." (Recording at 1:22:42.) During the back and forth that followed, Freeman stated that he wanted a federal attorney and that "I want to know what all is going on before I end up—I don't wanna speak, you know?" (Recording 1:23:22.) Officer Cook then again suggested that Freeman could get a lower sentence if he cooperated: "Just because you're charged [in federal court] doesn't mean you have to do exactly what the guidelines say. The feds give way more cooperation." (Recording at 1:24:19.) He followed that statement with "Again, I'm not trying to convince you of anything." (Recording at 1:24:48.) Freeman then again asked what he was being charged with, and Officer Cook said the drugs found in his apartment and car. (Recording at 1:24:51.) That prompted Freeman to deny that he had drugs in his car, but to "admit to" any drugs found at the house. (Recording at 1:25:20, 1:25:37.)

Finally, about ten minutes after he first asserted his right to an attorney, Freeman stated he would talk to the officers without an attorney present:

> Officer Cook: "Here's the deal. I will gladly continue having a conversation with you, but because you've asked to speak with an attorney—"
>
> Freeman: "Speak."
>
> Officer Cook: "Well, do you want to talk to me?"
>
> Freeman: "Talk."
>
> Officer Cook: "I need you to sign this form. [Officer Cook placed the Notification of Rights form back in front of Freeman.] I want to be clear that you are signing it voluntarily because, again, I'm not trynna convince you of it, but before we get ourselves in a bad spot by continuing to talk, fair?"

4

  Freeman: "Yeah."

(Recording at 1:26:33.) At that point, Freeman and Officer Cook both signed the Notification of Rights form. Officers Cook and Shust then began their official interrogation of Freeman.

## II. STANDARD OF LAW

  The Fifth Amendment to the Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. 5. The Sixth Amendment provides that the accused in a criminal prosecution has the right to "the Assistance of Counsel for his defence." U.S. Const. amend 6. The Court's analysis will focus on the Fifth Amendment because that issue is dispositive.

  The warnings set out in *Miranda v. Arizona,* 384 U.S. 436 (1966), "ensure that a suspect knows of his rights not to talk to the police, to have a lawyer present, and to discontinue talking at any time, and ensure that the suspect is apprised that his statements can be used to secure his conviction." *Stanley v. Lazaroff*, 82 F. App'x 407, 421 (6th Cir. 2003). In addition to the duty to inform an accused of his rights, "*Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, or if he states that he wants an attorney, the interrogation must cease." *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (cleaned up). A defendant can waive these *Miranda* rights, but the waiver must be voluntary, knowing, and intelligent. *Miranda*, 384 U.S. at 444; *United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010). It is the Government's burden to establish a waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168 (1986). Significantly for this case, if an accused unambiguously invokes his *Miranda* right to an attorney, then the police cannot continue the interrogation "unless the accused himself initiates further communication, exchanges, or

conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–485 (1981) (emphasis added).

### III. ANALYSIS

Freeman moves to strike the statements he made during his custodial interview on March 14, 2024 arguing that the police officers violated the *Edwards* rule by interrogating him immediately after he invoked his right to counsel. The Government does not dispute that Freeman unambiguously invoked his right to counsel when he said he "would love to talk to a lawyer" in response to the reading of his *Miranda* rights. (Recording at 1:15:55.) At that point, the "bright-line, prophylactic *Edwards* rule" kicked in. *Abela v. Martin*, 380 F.3d 915, 927 (6th Cir. 2004), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010). "[O]nce a suspect invokes his Miranda rights [to counsel], all interrogation must cease unless the defendant initiates further communication." *Hill v. Brigano*, 199 F.3d 833, 840 (6th Cir. 1999); *see also Abela*, 380 F.3d at 927 ("[W]hen a suspect invokes his Fifth Amendment right to counsel, police questioning must cease until counsel is present."). "[C]ourts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95 (1984).

Here, the police immediately continued their interview with Freeman after he invoked his right to counsel. Officer Cook initiated the continued communications, not Freeman. The Government argues that the continuing communications did not constitute an illegal interrogation. Instead, the Government asserts that the officers only advised Freeman of the charges he faced and answered his questions until Freeman stated that he wanted to talk without an attorney. An interrogation, however, includes a broader scope of communications than

6

merely formal questions directed by law enforcement to the suspect or arrestee. "'Interrogation' includes express questioning and its functional equivalent." *United States v. Soto*, 953 F.2d 263, 264 (6th Cir. 1992). It includes "any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). The purpose of the *Edwards* prohibition against interrogation after an invocation of counsel is prevent the police from badgering a defendant into waiving his previously asserted *Miranda* rights, which is precisely what happened here. *Maryland v. Shatzer*, 559 U.S. 98, 108 (2010).

The officers' continuing communications with Freeman were not free of coercive custodial pressure. Officer Cook told Freeman that their drug trafficking investigation had been ongoing for six months, that Freeman would face charges in federal court, and that he faced a mandatory minimum sentence of ten years in prison. (Recording at 1:16:15.) Officer Cook disclosed that money and drugs had been found in his apartment. (Recording at 1:17:47.) When Freeman offered an innocent explanation for the money, Officer Cook responded by emphasizing that law enforcement officials still had the confiscated drugs "at a bare minimum" and that Freeman would "be going down to the jail." (Recording at 1:20:00.) These statements seem intended to induce Freeman to keep talking and make an incriminating statement. Indeed, Freeman made an incriminating statement when he appeared to admit to possessing the drugs found in his apartment. (Recording at 1:25:27.)

Officer Cook also suggested that Freeman might face less severe consequences if he cooperated by talking to them about the drug trafficking. He told Freeman, "[Y]ou have the ability to help yourself out . . . . The drug police are always wanting to have conversations" and "if you change your mind, we will gladly sit down and have a conversation." (Recording at

7

1:21:15.) Although Officer Cook made this statement in a non-threatening manner, the message he conveyed was that Freeman would help himself if he changed his mind about waiting for counsel and talked to them instead. The Court concludes that viewed in totality, the conversation initiated by Officer Cook immediately after Freeman invoked his right to counsel was an illegal interrogation for purposes of the Fifth Amendment and the *Edwards* rule. *See United States v. Gomez*, 927 F.2d 1530, 1536–1538 (11th Cir. 1991) (holding that the police interrogated the arrestee for purposes of *Edwards* when they informed him about the harsh sentence he faced and the benefits of cooperation); *United States v. Mullins*, No. CRIM.A. 11-04-ART, 2011 WL 1327030, at *3 (E.D. Ky. Mar. 21, 2011) (discussions about "the threat of arrest, potential trafficking charges, violation of supervised release, and the benefit of forming a level of cooperation" amounted to an interrogation), *report and recommendation adopted,* 2011 WL 1303321 (E.D. Ky. Apr. 6, 2011).

The facts in *United States v. Ware*, 338 F.3d 476 (6th Cir. 2003), offer an instructive contrast. In *Ware*, the police began their interactions with the defendant by reading him his *Miranda* rights. *Id.* at 479. After the defendant invoked his right to counsel, the police helped the defendant recall the name of an attorney he knew and chatted with him primarily about the attorney. *Id.* One officer who knew the defendant previously also asked about his mother. *Id.* The officers then informed the defendant that they had been unable to reach his attorney, but they agreed to take other steps to try to find counsel for the defendant. *Id.* Only then did the defendant volunteer to talk to the police without an attorney. *Id.* The court found that the police did not violate the *Edwards* rule because the communications about *Miranda* rights, finding an attorney, and the defendant's mother did not constitute an interrogation. *Id.* at 480–481. "These questions were not even tangentially related to criminal activity, nor did they hint at eliciting

8

incriminating information or prey on any particular susceptibility of the defendant." *Id.* at 481. Here, conversely, Officer Cook spoke to Freeman primarily about the scope of the task force's drug trafficking investigation, the strength of their case based on the drugs found in Freeman's apartment, and the consequences he faced. Officer Cook also suggested that Freeman could help himself by talking to them. In sum, Officer Cook here spoke about criminal activity and hinted at eliciting incriminating information, which the *Ware* court suggested amounts to an interrogation.[2]

The Government's arguments that the officers did not violate the *Edwards* rule are not persuasive. The Government likens this case to *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), in which the Supreme Court held that an arrestee who had invoked his right to counsel reinitiated communications for purposes of the *Edwards* rule by asking the police what was going to happen to him. *Id.* at 1043–1045. The Government overlooks a crucial material fact, however, that distinguishes this case from *Bradshaw*. In *Bradshaw*, "[t]he officer immediately terminated the conversation" when the arrestee invoked his right to counsel. (*Id.* at 1041–1042.) The arrestee then reinitiated the conversation by asking the question "[s]ometime later" when he was transferred from the police station to the county jail. *Id.* at 1042. The police officers here never terminated the conversation. Officer Cook told Freeman that he would not ask him questions after he asked for an attorney, but Officer Cook then immediately segued into a recitation of the course of the investigation, the charges Freeman faced, and the potential sentence. Freeman could not reinitiate, voluntarily or otherwise, a conversation that never terminated.

The Government also cites to *United States v. Binford*, 818 F.3d 261 (6th Cir. 2016), for the proposition that statements by the police that they will reward the detained suspect if he

---

[2] Officer Shust's questions to Freeman about whether he had an attorney, standing alone, would not be considered an interrogation.

9

cooperates are not objectively coercive. *Id.* at 271–272. The detained suspect in *Binford*, however, never invoked his right to counsel. *Id.* at 265–266. The *Edwards* prohibition against interrogation was not relevant in that case. Moreover, the *Binford* court characterized the interaction between the police and the detained suspect as an interrogation. *Id.* at 266–267. Nothing in *Binford* suggests that Officers Cook and Shust had the right to interrogate Freeman after he invoked his right to counsel.

All statements made by Freeman after he invoked his right to counsel were obtained in violation of the *Edwards* rule and Freeman's Fifth Amendment right to counsel. "[T]he prosecutorial consequences are severe for investigators" who violate a defendant's right to counsel. *United States v. Hart*, No. CRIM.A 08-109-C, 2009 WL 2552347, at *11 (W.D. Ky. Aug. 17, 2009). The statements must be suppressed.

### IV. CONCLUSION

For these reasons, Defendant Freeman's Motion to Suppress Statements (Doc. 58) is **GRANTED**. The statements Freeman made to police on March 14, 2024 following his arrest are suppressed.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge